STEPHEN R. TARBELL,      )
                     )
        Plaintiff,    )
                     )
    v.              )     CIVIL ACTION
                     )     NO.  15-10033-JGD
ROCKY'S ACE HARDWARE,   )
                     )
        Defendant.    )


# MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION TO STRIKE

March 20, 2018

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiff, Stephen R. Tarbell ("Tarbell"), has brought this action against his former employer, Rocky's Ace Hardware[1] ("Rocky's"), claiming that Rocky's engaged in various acts of disability discrimination related to Tarbell's heart condition, including Tarbell's wrongful termination from his employment.  In his Complaint, Tarbell has asserted claims against Rocky's for "Disability Discrimination" pursuant to Mass. Gen. Laws ch. 151B § 4 ("Chapter 151B") (Count I) and "Disability Discrimination" in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. ("ADA") (Count II).[2]  Presently before the court is "Defendant's Motion

---

[1] Defendant asserts that its correct legal name is Rocky's Hardware, Inc.  (See Def. SJ Br. (Docket No. 57) at 1).

[2] The parties dispute whether Tarbell has properly asserted a cause of action for failure to reasonably accommodate a disability.  (See Def. SJ Br. at 4 n.4; Pl. SJ Opp. (Docket No. 62) at 14-15).  See Henry v. United Bank, 686 F.3d 50, 59 (1st Cir. 2012) (disability discrimination and reasonable accommodation

for Summary Judgment" by which Rocky's is seeking summary judgment in its favor on each of the plaintiff's claims. (Docket No. 56). Also before this court is "Defendant's Motion to Strike" by which Rocky's is seeking to strike certain of plaintiff's responses to its Rule 56 statement of undisputed facts and certain statements set forth in plaintiff's memorandum in support of his opposition to summary judgment. (Docket No. 69).

The undisputed facts establish that Tarbell's claims for disability discrimination fail on the merits. Specifically, the undisputed facts do not show, or tend to show, that Tarbell was capable of performing the essential functions of his job with or without reasonable accommodation. Therefore, the defendant's Motion for Summary Judgment is ALLOWED. For the reasons set forth below, the defendant's Motion to Strike is MOOT.

## II. SCOPE OF THE RECORD

Rocky's has filed a motion to strike certain of Tarbell's responses to its Rule 56 statement of undisputed facts and certain statements set forth in plaintiff's memorandum in support of his opposition to summary judgment. (See Docket No. 69). In support of its motion, Rocky's points out that Tarbell makes assertions in both documents that are not supported by citations to record evidence, are contrary to record evidence, are argumentative, or are speculative. (See Rocky's Mem. in Supp. of Mot. to Strike (Docket No. 70)). Rocky's also points out that several of plaintiff's "responses" to undisputed facts are in fact entirely non-responsive. (See id.). While there is merit to many of Rocky's contentions, this court will not make individual rulings on the various alleged discrepancies. Instead, it has considered Rocky's

claims are independent claims under the ADA and Chapter 151B). However, as discussed below, the court need not decide this issue as it finds that, assuming *arguendo*, plaintiff has properly asserted such a claim, it fails on the merits.

statement of facts, Tarbell's response to the statement of facts, the evidentiary record, the briefing on the motion to strike, and counsel's oral argument before the court, in order to determine which facts are supported by record evidence and whether they are, in fact, truly undisputed. The following statement of facts details this court's analysis. As detailed herein, this court has concluded that while the parties disagree as to each other's motives, the material facts are not in dispute. The defendant is entitled to judgment on both of plaintiff's claims as a matter of law.

## III. **STATEMENT OF FACTS**[3]

The following facts are undisputed unless otherwise indicated.

### **Tarbell's Employment With Rocky's**

In October 2005, Tarbell began employment with Rocky's as an Assistant Manager in training at Rocky's Walpole, Massachusetts store. (DF ¶ 1). By September or October of 2010, Tarbell was promoted to Store Manager at the Walpole store by District Manager, Joslyn Babich ("Babich"), to whom he reported. (DF ¶ 2). Babich oversaw 10-13 Rocky's stores. (Id.).

In April 2011, Tarbell was diagnosed with a clogged artery in his heart. (DF ¶ 3). Due to his heart condition, Tarbell needed assistance with heavy lifting. (DF ¶ 4). Babich was aware of

---

[3] Unless otherwise stated, the facts are derived from: (1) Defendant's Rule 56 Statement of Undisputed Facts (Docket No. 58) ("DF"), and the Exhibits referenced therein ("Def. Ex. __"); (2) Plaintiff's Response to Defendant's Rule 56 Statement of Undisputed Facts (Docket No. 63) ("PR"); (3) the Affidavit of Karen Markham, which is attached as Def. Ex. 4 (Docket No. 58-4) ("Markham Aff."); (4) the supplemental Affidavit of Karen Markham, which is attached to Defendant's Reply Memorandum (Docket No. 68-1) ("Markham Suppl. Aff."); (5) the Affidavit of Christopher J. Trombetta (Docket No. 64) ("Trombetta Aff.") and the Exhibit thereto ("Trombetta Ex. 1"); and (6) the deposition transcript of Stephen R. Tarbell, which is located at Def. Ex. 1 (Docket No. 58-1) ("Tarbell Dep.").

Tarbell's heart condition and often asked him how he was doing.  (DF ¶ 3).  Tarbell told Babich

that his staff took care of the heavy lifting for him.  (DF ¶ 4).

## Tarbell's Reassignment

Over the course of Tarbell's employment, Rocky's Managers and Assistant Managers

were transferred from store-to-store as needed, which happened "all of the time."  (DF ¶ 5).

In 2012, Rocky's made the decision to close its Norwood store.  (DF ¶ 6).  This decision was not

announced until May 21, 2012.  (DF ¶ 40).  Rocky's anticipated that the Norwood store's

business would be picked up by the Walpole store.  (DF ¶ 34).  In or about May 2012, Babich

reorganized the management and staff in her district.  (DF ¶ 7).  As part of the reorganization,

Babich made the decision to move Tarbell to become the Manager of Rocky's store in

Randolph, where the previous Store Manager had been terminated because he had difficulty

managing his staff and there had been theft issues in the store.  (DF ¶ 8).  As part of the

reorganization, Babich made the decision to reassign Cory King from being the Manager of

Rocky's Fall River store to succeed Tarbell as the Manager of Rocky's Walpole store.  (DF ¶ 11).

Babich chose Mr. King to manage the Walpole store, in part, because even though he had

managed a smaller store (DF ¶ 13), Babich believed he "was ready for a larger volume store"

and he "had really great relationships with customers and knew how to connect and build

relationships with them."  (DF ¶¶ 12-13).[4]

On approximately May 7, 2012, Babich told Tarbell that he would be transferring to

Randolph in part because "the Walpole store was extremely well run"; Tarbell "had been able

---

[4] While Tarbell disputes Rocky's assessment of the needs of each store, there is no evidence that Babich
made anything other than business decisions in connection with the closure of the Norwood store and
the subsequent need for reassignment.

to run the store shorthanded, [his] assistant managers were very, very well trained and were able to handle the store, whether or not [he] was there"; and because "[he], and only [he], could possibly fix Randolph."  (DF ¶ 16).  Tarbell, who was not aware at that time that the Norwood store was closing, responded that he was not interested in being transferred to the Randolph store and that he "did not feel like he was physically going to be able to go in and do all of the work that was required of fixing a store."  (DF ¶ 19).  Tarbell told Babich that he was unhappy going to Randolph and asked her if he could "do something else[,]" including take a demotion.  (DF ¶ 25; Tarbell Dep. at 14).  Babich replied that there was no other position in the company for him.  (DF ¶ 25).  Later that same day, Karen Markham, Director of Human Services ("Markham"), called Tarbell and told him that she would work to try to find out if there was "anything that could be done."  (DF ¶ 27).  Later that week, on a conference call with Babich and Markham, Tarbell, unhappy that Babich and Markham told him that there was no other option for him, brought up that his health was an issue, and Markham replied[5] that she had nothing in her file that reflected a health issue and, according to Tarbell, told him that if he didn't take the position in Randolph, she would see to it that he wouldn't work anywhere in the company again.  (DF ¶¶ 28-29; Tarbell Dep. at 100).

### Tarbell's Medical Note

On May 14, 2012, Tarbell went to his healthcare provider, Kay A. Thompson, M.D. ("Dr. Thompson") and told her that "Rocky's wanted to put him in a position that he did not think he could handle."  (DF ¶ 31).  Dr. Thompson provided Tarbell with a note that stated "Restrictions:

---

[5] The parties agree that Markham "yelled" her response, and acknowledge that "Markham has a significant hearing impairment in both ears and wears hearing aids."  (See DF ¶ 29).

No heavy lifting, or more physically demanding <u>or new position</u> due to heart condition." (<u>Id.</u>;

Def. Ex. 5 (emphasis added)).  Tarbell faxed the note to Babich or Markham that day.  (DF ¶ 32).

On the same or the following day, Babich and Markham called Tarbell and together they

discussed Dr. Thompson's May 14, 2012 note.  (DF ¶ 33).  The parties agree that "[i]f the doctor

says that an employee cannot do something, then Rocky's honors what the doctor says." (<u>Id.</u>).

Markham had "significant concerns that Walpole may pick up business from Norwood,

and that could result in a different or more stressful job." (DF ¶ 34).  Therefore, Markham

spoke to Dr. Thompson for clarification of the note, asking "whether if the Walpole store was to

be picking up new business from a local store closing, would she consider that a new, different

or more stressful job for Tarbell." (DF ¶ 35).  Dr. Thompson said it would.  (<u>Id.</u>).  The parties

agree that based on Dr. Thompson's note and Markham's conversation with Dr. Thompson,

Tarbell could not be transferred to a new position in Randolph or remain the Walpole Store

Manager.  (DF ¶ 36).  Markham told Tarbell that based on his doctor's note, he would not be

able to return to work until he was in better health, and provided Tarbell with paperwork to

apply for job-protected leave pursuant to the Family and Medical Leave Act ("FMLA"). (<u>Id.</u>).[6]

On May 21, 2012, Cory King became the Store Manager in Walpole and Rocky's announced the

Norwood store closing.  (DF ¶¶ 39-40).

On May 22, 2012, Dr. Thompson completed an FMLA Certification of Health Care

Provider form wherein she indicated that Tarbell was "unable to perform any of [his] job

---

[6] Tarbell argues that he was forced to take FMLA leave and was not offered the job of Assistant Manager in Canton, which he asserts was available at that time.  However, as discussed later, there is no evidence that the position of Assistant Manager in Canton was available at that time or that there were any other available jobs at Rocky's at that time.

functions due to [his] condition" and provided that "the job functions the employee is unable to perform" was "no repetitive heavy lifting." (DF ¶ 43; Def. Ex. 6). As the May 22, 2012 form failed to mention the "no new position" restriction, which was articulated in the May 14 note, Markham asked Tarbell for clarification. (DF ¶ 44). On June 6, 2012, Tarbell emailed Markham that he was seeing his doctor later that week and that "he would get back to her after that." (Id.). On June 11, 2012, Dr. Thompson completed a Certification of Health Care Provider form that was identical to the May 22, 2012 form but included an explanatory letter. (DF ¶ 45; Def. Exs. 6, 9). The letter stated "To Whom It May Concern: Stephen Tarbell has significant heart disease and may require cardiac bipass surgery in the near future. <u>Increased stress caused by changing job positions or assignments</u> at this time could be deleterious to his health and I do not recommend it for medical reasons." (Def. Ex. 9 (emphasis added)). Tarbell took FMLA leave from mid-May through mid-August 2012. He sought and obtained unemployment insurance for the period of his FMLA leave, which Rocky's did not contest. (PR ¶ 55).

### Offers of Alternative Positions

Tarbell and Markham were not in contact in July 2012, while Tarbell was on leave. (DF ¶ 48). At some point in August, Tarbell told Markham that he was having surgery "next month" but did not tell her when it would take place. (DF ¶ 49). Before August 16, 2012, at the end of Tarbell's FMLA leave, Markham called Tarbell and told him that she had been holding some jobs open for him. (DF ¶ 50). She offered him the position of Assistant Manager at Rocky's store in Canton at the same rate of pay that he had been earning as Store Manager in Walpole. (DF ¶ 50). That position had become available on or about August 6, 2012. (Markham Suppl. Aff.

¶ 4).[7]  She also offered Tarbell the position of Paint Advisor in the Canton store, explaining that it would be "at a rate of about $10-$12/hour[.]" (DF ¶ 51; Trombetta Ex. 1).  In their communications around this time, Tarbell indicated that he needed reduced hours for up to three months and had some lifting restrictions.  (Trombetta Ex. 1).

On August 21, 2012, Tarbell emailed Markham to say that he would accept the Canton Assistant Manager position.  (DF ¶ 59).  In his email accepting the position, Tarbell did not identify any restrictions he thought he may have in returning to work.  (Id.).  Markham then asked Tarbell to get a note clearing him to work in a new position, with or without accommodations, and identifying what, if any, restrictions he had.  (DF ¶ 60).

In response, on or about August 24, 2012, Tarbell provided Markham with a note from Dr. Thompson dated August 24, 2012 that provided "Restrictions:  Stephen Tarbell can continue working with the same restrictions I outlined in May."  (Def. Ex. 13).

From August 24 through August 30, 2012, Markham and Tarbell engaged in a series of emails wherein Markham sought clarification from Tarbell about Dr. Thompson's August 24 letter and about Tarbell's ability to return to work.[8]  For example, on August 24, after receiving Dr. Thompson's letter, Markham emailed Tarbell expressing "[Dr. Thompson] [s]ent me paperwork that says the same thing as last time.  No new job…… Please call me asap."  (Def. Ex.

---

[7] Tarbell contends that he learned through Rocky's motion for summary judgment, that the Assistant Manager position in Canton had been available since at least May 7, 2012, when he was informed that he was going to have to move to Randolph.  (See Pl. SJ Opp. at 18).  He claims he would have taken the position at that time, and never would have sought a note from his doctor.  (See id. at 3).  However, Tarbell has misread Rocky's summary judgment papers.  As explained in Markham's Supplemental Affidavit, the position of Assistant Manager in Canton did not become available until August 6, 2012.  (Markham Suppl. Aff. ¶¶ 4-5).

[8] Tarbell disputes Rocky's description of these emails.  (See PR ¶¶ 61-70).  Since the emails themselves are not in dispute, the significant portions of them are quoted herein.

10 at 4).  Tarbell responded on August 25, "[t]hanks for acknowledging.  I meant to ask."  (Id.).

On August 26, Markham emailed Tarbell, "I'm confused are you coming back to work or not.  If

not I need to fill the positions.  Please call me!"  (Id.).  Later that day, Tarbell responded, "I'm

sorry Karen, I thought we were all set.  Please let me know what additional information you

need.  As I've already indicated my physical limitations are unchanged from May 19, and

therefore my doctors recommendations are unchanged as well.  If you think you're confused,

how do you think I feel.  Those recommendations have been the same since April 2011.

Somehow, between 5/19 and 5/21 they became an issue.  I'll try and call you tomorrow

afternoon."  (Id. at 3-4).  Markham replied,

> Let me try to clarify before we talk….  You recently told me that you
> believed you were capable of performing the assistant manager job in
> Canton which I had offered to you prior to your FML running out.
> However, the note your doctor provided me with on Friday still indicates
> no new assignment.  I need that to be cleared up – and she needs to be
> specific about how much weight you can lift and for how long she expects
> that restriction to last and confirm that you would be able to work 50
> hrs/wk….  I look forward to speaking with you tomorrow; we need to make
> a decision as I have been holding two key positions open and cannot afford
> to do that any longer.  The paint department/sales in Canton have suffered
> greatly because of that open position.  Likewise, I'm concerned about the
> effect the open assistants position is having on the store as well.

(Id. at 3).  The following day, on August 27, 2012, Tarbell replied "[m]y doctor has given you all

the information you should need.  Do not expect me to ask her to justify your decisions."  (Id.;

DF ¶ 65).  Markham replied, "[i]f your position is the doctor has given me everything I need to

make a decision, I will remind you that she has said no change in job and if that stands then I

ask you how you think I can offer you either the assistants job or the paint advisors job based

on that standing?" (Def. Ex. 10 at 2).

On August 30, Tarbell responded, expressing his desire to return to work but stating "[u]nfortunately I do not think I can do 50 hours, as I had previously indicated. Based on the advice of a defib specialist I saw at MGM late last week, I really need to follow through with the cardiac rehab program I had spoken of previously. I can however probably pull 30-40 hours if we can make scheduling work. To be clear I will have things to work around, for the next several months. Given that, I'm initially quite open to a [paint advisor] position (pending compensation) or perhaps some type of hybrid situation that benefits all. Hopefully I can resume full status following my therapy. . . . Believe me I wish I could define my medical situation better, but in fairness to both Rocky's and myself I simply cannot." (Id. at 1-2).

Markham responded that day, "[a]s I continue to say, I need your doctor to clarify to me in writing what you can and cannot do before we go any further. What you are saying is not consistent with what your doctor is providing. How many hours a week can you work, does that include nights and weekends. How many days in a row. How many pounds you can lift. How long does she expect the restrictions to be in place. Can you work in a different position." (Id. at 1). She continued, "Randy needed to fill his paint advisor position and made an offer to someone yesterday since we hadn't heard from you. Please get clarification from your doc asap so that we can continue to try to get you back to work." (Id.).

Tarbell responded, "I'm trying to get [Dr. Thompson] to fit me in so I can get more clarification. I can say that the hours restriction is most likely temporary as it's tied to the rehab schedule I will have to keep. Getting that set up is incredibly slow going and frustrating. I can also say that the lifting restrictions are likely permanent. Nights and weekends are not an issue,

in fact I prefer nights.  I will let you know what I can find out from my docs as soon as I can."

(Id.).

Despite the uncertainty of the situation, Tarbell made no effort to contact Markham in September.  (DF ¶ 71).  However, during that time period, according to Tarbell, Markham may have left him messages.  (Id.).  On September 17, 2012, the Assistant Manager Canton position was filled, because, according to Rocky's, "the store had been without an Assistant Manager for some time and the lack of an Assistant Manager had imposed a burden on the store's staffing as the store is open 7 days per week and 362 days per year."  (DF ¶ 73).

On Friday, September 21, 2012, Markham notified Tarbell that "based on his lack of response" to her previous messages she considered him "voluntarily terminated due to job abandonment, effective September 20, 2012."  (DF ¶ 75; Def. Ex. 14).  Tarbell replied later that day, "[i]f that's your decision so be it. . . .  You asked me to get full information from my doctor's asap, and that has been my intent. . . .  At your request I did not want to continue giving you partial information so I was waiting until I could give you a full accounting.  I would not have been able to provide that to you until I had met with my PCP, my cardiologist, and my electrophysiologist, to discuss the results of the CRT-D that was implanted on Monday 9/17."  (Def. Ex. 14).  Tarbell provided no further information to Rocky's.  (DF ¶ 76; PR ¶ 76).

On July 2, 2013, Tarbell filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD") for dual filing with the Equal Employment Opportunity Commission ("EEOC") that set forth similar allegations to those in the Complaint in this action.  (DF ¶ 80).

## IV.  ANALYSIS

### A.  Summary Judgment Standard of Review

"The role of summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  PC Interiors, Ltd. v. J. Tucci Constr. Co., 794 F. Supp. 2d 274, 275 (D. Mass. 2011) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)) (additional citation omitted).  The burden is upon the moving party to show, based upon the discovery and disclosure materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'"  Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)).  "A fact is 'material' only if it possesses the capacity to sway the outcome of the litigation under the applicable law."  Id. (quotations, punctuation and citations omitted).

"Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue."  PC Interiors, Ltd., 794 F. Supp. 2d at 275.  The opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts.  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841-42 (1st Cir. 1993).  Accordingly, "the nonmoving party 'may not rest upon mere allegation or denials of his pleading[,]'" but must set forth specific facts showing that there is a genuine issue for trial.  Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)).  A court will disregard "conclusory allegations, improbable inferences, and unsupported speculation" in determining whether a genuine factual dispute

exists.  Cherkaoui v. City of Quincy, 877 F.3d 14, 24 (1st Cir. 2017) (citing Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir. 2009)).

Applying these principles to the instant case compels the conclusion that the defendant's motion for summary judgment must be allowed.

## B.    Statute of Limitations

Rocky's argues that Tarbell's claims of discrimination stemming from his transfer from the Walpole store to the Randolph store, and claims arising out of his taking FMLA leave, or not being reinstated upon the end of his FMLA leave, are time-barred.  (Def. SJ Br. at 4-8.)  This court agrees.  As the court in Kahriman v. Wal-Mart Stores, Inc. explained,

> The ADA adopts the procedural provisions governing Title VII, and as a result, the statutes and case law discussing the statute of limitations in the Title VII context are equally applicable here.  *See Tobin v. Liberty Mut. Ins. Co.,* 553 F.3d 121, 130 n.7 (1st Cir. 2009).  Under both Title VII and chapter 151B, a plaintiff must file an administrative complaint with the MCAD or the EEOC within 300 days of the date of the occurrence of the alleged unlawful employment practice.  *See* 42 U.S.C. § 2000e–5(e)(1); Mass. Gen. Laws ch. 151B, § 5; *Tuli v. Brigham & Women's Hosp.,* 656 F.3d 33, 40 (1st Cir. 2011); *Ocean Spray Cranberries, Inc. v. Mass. Comm'n Against Discrimination,* 441 Mass. 632, 808 N.E.2d 257, 265–66 (2004).

115 F. Supp. 3d 153, 160 (D. Mass. 2015) (footnote omitted).[9]  The statute of limitations for a discrimination claim begins to run when an employee learns of the allegedly adverse employment action.  Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 749 (1st Cir. 1994).

---

[9] "Although the charge-filing period for Title VII claims is typically 180 days, it is extended to 300 days where the state anti-discrimination agency enforces a parallel state or local law, as the MCAD does." Kahriman, 115 F. Supp. 3d at 160 n.5 (citing 42 U.S.C. § 2000e–5(e)(1); 42 U.S.C. § 12117(a); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002); and Williams v. City of Brockton, 59 F. Supp. 3d 228, 245 (D. Mass. 2014)).

Tarbell filed his charge with the MCAD and EEOC on July 2, 2013. As 300 days prior to July 2, 2013 was September 5, 2012, all alleged discrete actions of discrimination of which Tarbell was aware prior to September 5, 2012 are time-barred. This includes any claim based on Rocky's decision to transfer Tarbell away from the Walpole store in May 2012, any claim based on Rocky's failure to offer a different job to Tarbell in May 2012, any claim related to Tarbell being forced to take FMLA leave.[10]

Thus, the only discrete, non-time-barred acts of alleged disability discrimination in this case are (1) Rocky's failure to hire Tarbell for the Assistant Manager position in Canton on September 17, 2012; (2) Rocky's alleged failure to provide an accommodation to Tarbell after the exhaustion of his FMLA leave, in the form of reduced hours or a leave of absence;[11] and (3) Tarbell's termination on September 20, 2012. (See Pl. SJ Opp. at 1).

### C. Disability Discrimination under the ADA and Chapter 151B

Rocky's argues that Tarbell has failed to establish a prima facie case of disability discrimination under the ADA and Chapter 151B. This court agrees.

As the court in Boadi v. Center for Human Development, Inc. has explained,

> The ADA provides: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures,

---

[10] Tarbell does not dispute Rocky's contention that these are discrete actions barred by the statute of limitations. See also Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 129 (1st Cir. 2009) (discrete discriminatory acts triggering the statutory limitations period include denial of transfer, refusal to hire, refusal to accommodate, and termination). To the extent that Tarbell argues that these actions should be considered as evidence that Rocky's proffered reason for his termination is pretextual, see the discussion below on the merits of his disability claims under the ADA and Chapter 151B.

[11] The parties disagree as to whether Tarbell has properly alleged as a cause of action disability discrimination for failure to accommodate. See note 2. However, as discussed below, this court finds that even if properly asserted, a claim for failure to reasonably accommodate would fail on the merits for the same reason that plaintiff's claim for disability discrimination fails.

the hiring, advancement, or discharge of employees, employee compen-
sation, job training, and other terms, conditions, and privileges of
employment." 42 U.S.C. §§ 12112(a). "Similarly, Chapter 151B prohibits the
same types of discrimination under state law." *DiBlasi v. Liberty Mut. Grp.,
Inc.*, Civil Action No. 12-10967-RGS, 2014 WL 1331056, at *14 (D. Mass.
April 3, 2014).

239 F. Supp. 3d 333, 349 (D. Mass. 2017). "A plaintiff may prove a claim of disability discrimina-

tion under the ADA and Chapter 151B by either direct or indirect evidence." Id. (citing Jacques

v. Clean–Up Grp., Inc., 96 F.3d 506, 511 (1st Cir. 1996)). Because Tarbell does not present direct

evidence of discrimination, his claim is subject to the "three-stage burden shifting framework of

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)."

Id. at 349-50 (quoting Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 138 (1st Cir. 2012);

and citing Moebius v. Tharperobbins Co., Civil Action No. 15-10751-MBB, 2016 WL 6476941, at

*8 (D. Mass. Nov. 1, 2016)).

As the court further explained, pursuant to the *McDonnell Douglas* framework:

> Plaintiff has the initial burden to establish a prima facie case under this
> framework. *See McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817.
> "The rather minimal showing functions to raise an inference of discrimi-
> nation." *Moebius*, 2016 WL 6476941, at *8 (citing *Tex. Dep't of Cmty.
> Affairs v. Burdine*, 450 U.S. 248, 253-54, 101 S.Ct. 1089, 67 L.Ed.2d 207
> (1981)). If Plaintiff establishes the inference, the burden shifts to Defen-
> dant[] "to articulate a legitimate, non-discriminatory reason for its action."
> *Ramos–Echevarría v. Pichis, Inc.*, 659 F.3d 182, 186-87 (1st Cir. 2011) (citing
> *Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 99 (1st Cir. 2007));
> *see also McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817. "If the
> employer offers a non-discriminatory reason, the burden then shifts back
> to the plaintiff to show that the employer's justification is mere pretext
> cloaking discriminatory animus." *Ramos–Echevarría*, 659 F.3d at 187 (citing
> *Freadman*, 484 F.3d at 99).

Id. at 350.

Rocky's argues that Tarbell has failed to establish a prima facie case of disability discrimination under the ADA and Chapter 151B. "To establish a prima facie case of disability discrimination at the first *McDonnell Douglas* stage, Plaintiff has the burden of showing 'that (1) [he] suffers from a disability or handicap, as defined by the ADA and Chapter 151B, that (2) [he] was nevertheless able to perform the essential functions of [his] job, either with or without reasonable accommodation, and that (3) [his employer] took an adverse [employment] action against [him] because of, in whole or in part, [his] protected disability.'" Id. (footnote omitted) (quoting Tobin, 433 F.3d at 104).[12] In order to prove failure to accommodate a disability under the ADA and Chapter 151B, a plaintiff must also prove that second element, that with or without reasonable accommodation, plaintiff was a qualified individual able to perform the essential functions of the position involved. See Fiumara v. President & Fellows of Harvard Coll., 526 F. Supp. 2d 150, 156 (D. Mass. 2007), aff'd 327 F. App'x 212 (1st Cir. 2009).

Rocky's argues that there is no evidence that Tarbell could have performed the essential job functions of any open position at Rocky's with or without reasonable accommodation, between the receipt of Dr. Thompson's May 2012 notes and the date that Tarbell's employment at Rocky's was terminated. (See Def. SJ Br. at 9-10). In return, Tarbell argues that the evidentiary record supports that he could have performed the jobs of Assistant Manager and

---

[12] See 42 U.S.C. § 12111(8) defining "a qualified individual" with a disability as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires" and Mass. Gen. Laws ch. 151B § 1(16) ("The term 'qualified handicapped person' means a handicapped person who is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable accommodation to his handicap."). See also Boadi, 239 F. Supp. 3d at 350 n.18 (explaining that the ADA's definition of disability is "essentially the same" as Chapter 151B's definition of handicap and citing 42 U.S.C. § 12102(2) and Mass. Gen. Laws ch. 151B, § 1(17)).

Paint Advisor in Canton, despite his heart condition,[13] with the accommodation of a leave of absence and/or a reduction in hours, and that those accommodations were reasonable.  (See Pl. SJ Opp. at 11-13).

After thorough consideration of the record, this court concludes that there is no evidence that shows, or tends to show, that after May 2012, Tarbell could have performed any new position at Rocky's, including those of Assistant Manager and Paint Advisor in Canton. Furthermore, the accommodations that Tarbell asserts would have enabled him to perform the essential functions of those jobs – a leave of absence and/or reduction in hours – were not reasonable given that there is no evidence that Tarbell could perform either job, even with reduced hours, and because, assuming Tarbell requested leave, the leave he requested was indefinite.

### No "New Position"

There is no evidence in the record that shows or tends to show, that Tarbell was qualified to perform the essential functions of any "new position" at Rocky's, including the Canton Assistant Manager position and the Canton Paint Advisor position, from May 14, 2012 through the date of his termination.  Tarbell's doctor's note dated May 14, 2012 indicated that he was not medically capable of taking on a "new position."  (Def. Ex. 5).  This restriction was reiterated by Dr. Thompson's June 11, 2012 letter of clarification to Tarbell's May 22 FMLA form, stating that "[i]ncreased stress caused by changing job positions or assignments at this time could be deleterious to his health and I do not recommend it for medical reasons."  (Def.

---

[13] For purposes of summary judgment, Rocky's does not contest that Tarbell was disabled.  (See Def. SJ Br. at 9 n.6).

Ex. 9 (emphasis added)).  Thus, the medical notes from May 14 and May 22, as clarified by the

June 11 letter, restricted Tarbell from taking any "new position" at Rocky's due to the stress

such a change would cause.

In her August 24, 2012 letter, Dr. Thompson reiterated the limitation on no "new

position" when she wrote that Tarbell "can continue working with the same restrictions I

outlined in May."  (Def. Ex. 13).  On its face, the plain meaning of this note is that Tarbell could

return to work, but only in the same position that he had held previously in Walpole but

without the added business caused by the closure of the Norwood store.  In short, to the extent

that Tarbell contends that Dr. Thompson's August 24 note "cleared [him] to return to work," it

was to a position that simply no longer existed.  (Pl. SJ Opp. at 11-12; PR ¶ 61).[14]

Rocky's was entitled to rely on the medical information Tarbell had provided.  There-

fore, Tarbell has failed to meet his burden of providing evidence that he was capable of

performing the essential functions of an open position at Rocky's with or without accommo-

dation.

**Accommodation of a Leave of Absence and/or Reduced Hours**

Tarbell argues that he could have performed the positions of Assistant Manager and

Paint Advisor with an accommodation in the form of a leave of absence and/or a reduction in

---

[14] Tarbell contends that the August 24, 2012 note approves him for a position as the Canton Assistant Manager and only prohibits him from taking a position that he, himself, felt would cause him undue stress.  (See PR ¶ 61).  Tarbell's interpretation is not supported by the language of the doctor's communications.  The inconsistency between Tarbell's interpretation and the language of the doctor's communications reasonably caused Rocky's to ask Tarbell to obtain further clarification from his doctor. While Tarbell faults Rocky's for not calling his doctor directly, he has not pointed to any support for the proposition that Rocky's was obligated to do so, especially in light of Tarbell's representations that he would get the information from his doctor.

hours.  (Pl. SJ Opp. at 13-15).  However, the record indicates that while Rocky's was willing to

discuss such alternatives once it obtained confirmation from Tarbell's doctor that he would, in

fact, be able to perform the job with such accommodations,[15] Tarbell never received such a

note from his doctor, and the doctor had repeated that Tarbell could not take on a new job.  In

light of Dr. Thompson's notes, Rocky's was not obligated to offer either the position of Assistant

Manager or Paint Advisor to Tarbell as an accommodation, as those positions were at that time

contrary to the medical advice of Tarbell's doctor.  See Jones v. Wallgreens, 765 F. Supp. 2d

100, 108 n.3 (D. Mass. 2011) , aff'd 679 F.3d 9 (1st Cir. 2012) ("[A]n employer is obviously not

obligated to offer an 'accommodation' to an employee that is contrary to medical advice and

would place the employee at risk.").

Moreover, Rocky's was not obligated to hold those positions open indefinitely for

Tarbell.  Indeed, after Markham offered the positions of Assistant Manager and Paint Advisor to

Tarbell, she held them open for at least four weeks and two weeks, respectively, during which

Tarbell was given the opportunity to provide medical clearance indicating that he could

perform a new position.  (See DF ¶¶ 50, 66, 73).  Tarbell did not communicate with Rocky's

during this time, leaving Rocky's to guess what was going on.  It was entirely reasonable for

Rocky's to fill those positions when it became an undue hardship for the Canton store to

operate without them.  See Watkins v. J & S Oil Co., 164 F.3d 55, 61-62 (1st Cir. 1998) (affirming

district court's determination that leaving employee's position open would not be considered a

---

[15] Rocky's did, in fact, offer the Assistant Manager position in Canton with reduced hours, so long as Tarbell provided medical clearance to perform that job.  (See Def. Ex. 3 at 56-57; PR ¶ 66).  However, the record does not support that Tarbell received medical clearance to perform that job prior to his termination.

reasonable accommodation when the employee's absence posed an undue hardship on the employer).

Nonetheless, Tarbell argues that he could have performed the Assistant Manager or Paint Advisor position with the accommodation of a leave of absence to undergo and recover from his heart surgery, after the exhaustion of his FMLA leave. The parties dispute whether Tarbell actually requested an extension of his leave to undergo and recover from heart surgery. However, even assuming that he did request such an accommodation, the record evidence shows that Tarbell did not sufficiently communicate a prospective return to work date, or even a date by which he would have been able to provide a prospective return to work date. "Under Massachusetts and federal law, a leave of absence and leave extensions are reasonable accommodations in some circumstances" yet "[a]n open-ended or indefinite leave extension . . . is not reasonable." Fiumara, 526 F. Supp. 2d at 157 (citing Watkins, 164 F.3d at 61-62; Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 455-56, 772 N.E.2d 1054, 1064 (2002)). Here, Tarbell elected not to keep Rocky's informed about his treatment or prospects to return, even if they were uncertain. Rocky's was not obligated either to guess what was going on, or to extend his leave indefinitely. See Fiumara, 526 F. Supp. 2d at 158.

Tarbell argues that he did not communicate with Markham in September because Markham "didn't want partial information" and "was getting frustrated by dribs and drabs of information" and therefore Tarbell was waiting to communicate his needs for accommodation until he had all of the information about his health condition and limitations. (See Tarbell Dep. at 165, 166). However, he did not even communicate that he was going to hold off sharing information, until after he received the notice that Rocky's considered him to have voluntarily

20

terminated his position.  In fact, he did not attempt to reopen lines of communication after he received the notice.  Thus, his request for an accommodation in the form of an extension of a medical leave, if he in fact made such a request in August 2012, was, from Rocky's perspective, a request for a leave of absence of indefinite length.  Therefore, Rocky's was under no obligation to provide such an accommodation.

Finally, by September 17, 2012, both the Paint Advisor and the Assistant Manager positions in Canton had been filled.  Tarbell has provided no evidence that, as of the date of his termination, there was a vacant position available at Rocky's that Tarbell was capable of performing, and Rocky's was not required under Chapter 151B or the ADA to create a position for Tarbell.  See Russell, 437 Mass. at 454, 772 N.E.2d at 1063 (citing August v. Offices Unlimited, Inc., 981 F.2d 576, 581 n.4 (1st Cir. 1992)).

Tarbell has failed to meet his burden of showing that he could perform essential job functions with or without reasonable accommodation.

## V. <u>CONCLUSION</u>

For all the reasons detailed herein, Defendant's Motion for Summary Judgment (Docket No. 56) is ALLOWED and Defendant's Motion to Strike (Docket No. 69) is MOOT.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge